## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOAM DAMRI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVEPERSON, INC., ROB LOCASCIO, and JOHN COLLINS,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Noam Damri ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding LivePerson, Inc. ("LivePerson" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired LivePerson securities between May 10, 2022 and March 16, 2023, both dates inclusive (the "Class Period"), seeking to

recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      LivePerson delivers mobile and online messaging solutions through Conversational Artificial Intelligence.  In February 2022, the Company acquired WildHealth, Inc. ("WildHealth"), a precision medicine service which purportedly "leverages advanced machine learning to combine DNA analysis, biometrics, microbiome testing and phenotypic data to provide people with a blueprint for truly optimized health and a maximized health span."  As part of its business model, WildHealth often receives reimbursements for providing services to certain Medicare programs.

3.      In November 2022, unbeknownst to investors, WildHealth received notice that reimbursements for its services rendered under a Medicare demonstration program related to COVID-19 testing (the "Program") were suspended pending further review.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's disclosure controls and procedures contained a material weakness; (ii) accordingly, LivePerson maintained deficient internal controls over its financial reporting; (iii) as a result, LivePerson's Q3 2022 financial statements failed to disclose the suspension of WildHealth's Medicare reimbursements in connection with the Program and the resulting negative impact on the Company's future revenues; (iv) accordingly, LivePerson had overstated the Company's future financial position and/or prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On February 28, 2023, before market hours, LivePerson issued a Notification of Late Filing on Form 12b-25 regarding its Annual Report on Form 10-K for the year ended December 31, 2022 (the "2022 10-K").  Among other things, the notification revealed that, as a result of LivePerson's acquisition of WildHealth, "the Company requires more time to perform additional review and testing of revenue recognition with respect to a recently discontinued WildHealth program, for which Medicare reimbursement is suspended pending further governmental review, and to complete its in-process review of internal controls and procedures."

6.      On this news, LivePerson's share price fell $1.69 per share, or 14.31%, to close at $10.12 per share on February 28, 2023.

7.      Then on March 6, 2023, before market hours, the Company issued a current report on Form 8-K which disclosed that "the referenced review of WildHealth revenue is anticipated to affect fourth quarter 2022 revenue attributable to WildHealth's participation in a Medicare demonstration program, due to suspension in November 2022 of Medicare reimbursements under the program and pending further governmental review."

8.      On this news, LivePerson's share price fell $0.78 per share, or 6.8%, to close at $10.69 per share on March 7, 2023.

9.      Then, on March 15, 2023, after market hours, the Company issued a press release announcing its Q4 2022 financial results on Form 8-K, which provided that "[t]otal revenue was $122.5 million for the fourth quarter of 2022, a decrease of 1% as compared to the same period last year" and "[w]ithin total revenue, business operations revenue for the fourth quarter of 2022 decreased 1% from the comparable prior-year period to $113.0 million, and revenue from consumer operations decreased 3% from the comparable prior-year period to $9.4 million."

10.     Finally, on March 16, 2023, before market hours, the Company filed the 2022 10-K with the SEC.  The 2022 10-K revealed that "due to certain control deficiencies which aggregated to a material weakness in the Company's internal control over financial reporting as further described below, our disclosure controls and procedures were not effective as of December 31, 2022" and "[t]he control deficiencies, which in aggregate constitute a material weakness, were identified in connection with the Company's previously disclosed review of certain transactions related to its subsidiary WildHealth."

11.     On this news, LivePerson's share price fell $5.64 per share, or 57.73%, to close at $4.13 per share on March 16, 2023, damaging investors.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  LivePerson is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

16.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.    Plaintiff, as set forth in the attached Certification, acquired LivePerson securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.    Defendant LivePerson is a Delaware corporation with principal executive offices located at 530 7th Avenue, Floor M1, New York, New York, 10018.  LivePerson's securities trade in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "LPSN".

19.    Defendant Rob LoCascio ("LoCascio") has served as the Company's Founder and Chief Executive Officer at all relevant times.

20.    Defendant John Collins ("Collins") has served as the Company's Chief Financial Officer at all relevant times.

21.    Defendants LoCascio and Collins are referred to herein collectively as the "Individual Defendants."

22.    The Individual Defendants possessed the power and authority to control the contents of LivePerson's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of LivePerson's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions

with LivePerson, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

23.    LivePerson and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24.    LivePerson delivers mobile and online messaging solutions through Conversational Artificial Intelligence.  In February 2022, the Company acquired WildHealth, a precision medicine service which purportedly "leverages advanced machine learning to combine DNA analysis, biometrics, microbiome testing and phenotypic data to provide people with a blueprint for truly optimized health and a maximized health span."

### Materially False and Misleading Statements Issued During the Class Period

25.    The Class Period begins on May 10, 2022, when, after the market had closed, the Company filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2022 (the "Q1 2022 10-Q").  The Q1 2022 10-Q stated failed to identify any material weaknesses with the Company's internal controls, stating, in relevant part:

**Item 4. Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

***Based on that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as***

*of March 31, 2022* to ensure that the information we are required to disclose in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that such information is accumulated and communicated to our management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

Changes in Internal Control Over Financial Reporting

There were no changes in our internal control over financial reporting during the three months ended March 31, 2022 identified in connection with the evaluation thereof by our management, including the Chief Executive Officer and Chief Financial Officer, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.[1]

26.     Appended to the Q1 2022 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "the information contained in the [Q1 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     On August 9, 2022, after market hours, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2022 (the "Q2 2022 10-Q").  The Q2 2022 Report failed to identify any material weaknesses with the Company's internal controls, stating, in relevant part:

**Item 4. Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

**Based on that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2022** to ensure that the information we are required to disclose in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that such information is accumulated and communicated to our management, including the Chief Executive

---

[1] All emphases included herein are added unless otherwise noted.

Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

*Changes in Internal Control Over Financial Reporting*

There were no changes in our internal control over financial reporting during the three months ended June 30, 2022 identified in connection with the evaluation thereof by our management, including the Chief Executive Officer and Chief Financial Officer, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

28.     Appended to the Q2 2022 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "the information contained in the [Q2 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.     On November 7, 2022, after market hours, the Company issued a press release announcing its Q3 2022 financial results on Form 8-K.  The press release failed to identify any suspension of Medicare reimbursement from its subsidiary, WildHealth, stating, in relevant part:

> ***As for guidance, we expect continued strong performance by WildHealth and elevated professional services in the fourth quarter. Considering those expectations, coupled with more upsells and early renewals in the third quarter than previously expected, we are raising revenue guidance for the full year***. We now expect revenue in a range of $517 million to $521 million, or 10% to 11% year over year growth, an improvement to the midpoint of approximately $6 million. For full year adjusted EBITDA, due to our current expectation for potential revenue upside and additional P&L optimizations, we are reaffirming our previous guidance range of $1 million to $10 million.

30.     On November 8, 2022, after market hours, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2022 (the "Q3 2022 10-Q").  The Q3 2022 Report failed to identify any material weaknesses with the Company's internal controls, stating, in relevant part:

**Item 4. Controls and Procedures**

*Evaluation of Disclosure Controls and Procedures*

8

***Based on that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2022*** to ensure that the information we are required to disclose in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms, and to ensure that such information is accumulated and communicated to our management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

*Changes in Internal Control Over Financial Reporting*

There were no changes in our internal control over financial reporting during the three months ended September 30, 2022 identified in connection with the evaluation thereof by our management, including the Chief Executive Officer and Chief Financial Officer, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

31.     Appended to the Q3 2022 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "the information contained in the [Q3 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.     The statements referenced in ¶¶ 25-31 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's disclosure controls and procedures contained a material weakness; (ii) accordingly, LivePerson maintained deficient internal controls over its financial reporting; (iii) as a result, LivePerson's Q3 2022 financial statements failed to disclose the suspension of WildHealth's Medicare reimbursements in connection with the Program and the resulting negative impact on the Company's future revenues; (iv) accordingly, LivePerson had overstated the Company's future financial position

and/or prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

### **The Truth Emerges**

33.     On February 28, 2023, before market hours, LivePerson issued a Notification of Late Filing on Form 12b-25 regarding the 2022 10-K which revealed, in relevant part:

> ***The Company has determined that it is unable to file its Form 10-K within the prescribed time period provided by the applicable rules of the Securities and Exchange Commission without unreasonable effort and expense.***
>
> ***In view of the in-process integration of the Company's 2022 acquisition of WildHealth, the Company requires more time to perform additional review and testing of revenue recognition with respect to a recently discontinued WildHealth program, for which Medicare reimbursement is suspended pending further governmental review, and to complete its in-process review of internal controls and procedures.***
>
> The Company currently anticipates filing its Form 10-K for the year ended December 31, 2022 within the fifteen calendar day grace period provided by Rule 12b-25.

34.     On this news, LivePerson's share price fell $1.69 per share, or 14.31%, to close at $10.12 per share on February 28, 2023.

35.     Then on March 6, 2023, before market hours, the Company issued a current report on Form 8-K which stated, in relevant part:

> On February 28, 202[3], LivePerson, Inc. (the "Company") filed a Notification of Late Filing on Form 12b-25 stating it was unable to file its Form 10-K for the year ended December 31, 2022 within the prescribed time period without unreasonable effort or expense because it required additional time to complete a review of revenue associated with a recently discontinued program of its subsidiary Wild Health, and to complete its in-process review of internal controls and procedures.
>
> ***To provide additional clarity to investors, the Company notes that the referenced review of WildHealth revenue is anticipated to affect fourth quarter 2022 revenue attributable to WildHealth's participation in a Medicare demonstration program, due to suspension in November 2022 of Medicare reimbursements under the program and pending further governmental review.***

10

The Company currently anticipates filing its Form 10-K for the year ended December 31, 2022 within the fifteen calendar day grace period provided by Rule 12b-25.

36.    On this news, LivePerson's share price fell $0.78 per share, or 6.8%, to close at

$10.69 per share on March 7, 2023.

37.    Then, on March 15, 2023, after market hours, the Company issued a press release

announcing its Q4 2022 financial results on Form 8-K.  The press release stated, in relevant part:

**Fourth Quarter Highlights**

***Total revenue was $122.5 million for the fourth quarter of 2022, a decrease of 1% as compared to the same period last year*** as the company continues to execute on its plan to exit non-core lines of business. ***Within total revenue, business operations revenue for the fourth quarter of 2022 decreased 1% from the comparable prior-year period to $113.0 million, and revenue from consumer operations decreased 3% from the comparable prior-year period to $9.4 million***.

38.    Finally, on March 16, 2023, before market hours, the Company filed the 2022 10-

K with the SEC.  The 2022 10-K stated, in relevant part:

**Item 9A. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Our management, including the Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our "disclosure controls and procedures," as that term is defined in Rule 13a-15(e) promulgated under the Exchange Act, as of December 31, 2022.

Based on that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that, due to certain control deficiencies which aggregated to a material weakness in the Company's internal control over financial reporting as further described below, our disclosure controls and procedures were not effective as of December 31, 2022.

**Management's Annual Report on Internal Control over Financial Reporting**

Our management evaluated the effectiveness of our internal control over financial reporting as of December 31, 2022 based on the framework established in "Internal Control — Integrated Framework (2013)," issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). ***As a result of its review,***

*management identified deficiencies in the Company's internal control over financial reporting as of December 31, 2022 that in the aggregate constitute a material weakness as further discussed below. As a result, our management concluded that as of December 31, 2022, our internal control over financial reporting was not effective.*

*The control deficiencies, which in aggregate constitute a material weakness, were identified in connection with the Company's previously disclosed review of certain transactions related to its subsidiary WildHealth, which was acquired in February 2022, and primarily include a combination of ineffective operation of controls and inadequate controls related to: formal review, approval, and evaluation of non-core, complex transactions as well as engagement with government agencies; segregation of duties between accounting and contracting approval functions for non-core, complex transactions; and formal review, approval and evaluation of manual journal entries.*

39. On this news, LivePerson's share price fell $5.64 per share, or 57.73%, to close at $4.13 per share on March 16, 2023, damaging investors.

40. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

41. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

acquired LivePerson securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, LivePerson securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by LivePerson or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of LivePerson;

- whether the Individual Defendants caused LivePerson to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of LivePerson securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

48.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- LivePerson securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold LivePerson securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of LivePerson securities;

and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire LivePerson securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for LivePerson securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about LivePerson's finances and business prospects.

55.     By virtue of their positions at LivePerson, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers

and/or directors of LivePerson, the Individual Defendants had knowledge of the details of LivePerson's internal affairs.

57.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of LivePerson.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to LivePerson's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of LivePerson securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning LivePerson's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired LivePerson securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

58.     During the Class Period, LivePerson securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of LivePerson securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the

Class, the true value of LivePerson securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of LivePerson securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

61.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, the Individual Defendants participated in the operation and management of LivePerson, and conducted and participated, directly and indirectly, in the conduct of LivePerson's business affairs. Because of their senior positions, they knew the adverse non-public information about LivePerson's misstatement of income and expenses and false financial statements.

63.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to

LivePerson's financial condition and results of operations, and to correct promptly any public statements issued by LivePerson which had become materially false or misleading.

64.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which LivePerson disseminated in the marketplace during the Class Period concerning LivePerson's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause LivePerson to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of LivePerson within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of LivePerson securities.

65.     Each of the Individual Defendants, therefore, acted as a controlling person of LivePerson.  By reason of their senior management positions and/or being directors of LivePerson, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, LivePerson to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of LivePerson and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by LivePerson.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  December 1, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

THE LAW OFFICE OF JACOB SABO
Jacob Sabo
22a Mazzeh Street
Tel-Aviv, Israel
Telephone: (++972) 39070770

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I, _____Noam Damri_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against LivePerson, Inc. ("LivePerson") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire LivePerson securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired LivePerson securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in LivePerson securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed _____21/11/2023_____**
                        **(Date)**

_____
                        **(Signature)**

_____Noam Damri_____
                        **(Type or Print Name)**

**LivePerson, Inc. (LPSN)**                                                                  **Noam Damri**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 8/15/2022 | 500 | $13.7800 |
| Sale | 11/11/2022 | (150) | $14.0000 |
| Sale | 11/11/2022 | (50) | $14.0000 |
| Sale | 11/11/2022 | (17) | $14.0000 |
| Sale | 11/11/2022 | (233) | $14.0000 |