UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NOAM DAMRI, *individually and on behalf of all others similarly situated*,

                        Plaintiff,

                -v-

LIVEPERSON, INC., *et al.*,

                        Defendants.

23 Civ. 10517 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Pending in this putative class action under the securities laws is plaintiff Noam Damri's motion to be appointed lead plaintiff and to have his attorneys appointed lead counsel. There is no other contender to serve as lead plaintiff, but the issuer, LivePerson, Inc. ("LivePerson"), opposes Damri's appointment. For the following reasons, the Court grants the motion.

## I. Background

On December 1, 2023, Damri filed this action on behalf of all individuals who purchased shares of LivePerson between May 10, 2022 and March 16, 2023. Dkt. 1 ("Compl.") ¶ 1. Damri sues LivePerson and two of its officers, Robert Locascio and John Collins. Damri's Complaint alleges the following: LivePerson is a technology company that "delivers mobile and online messaging solutions through Conversational Artificial Intelligence." *Id.* ¶¶ 2, 24. In February 2022, LivePerson acquired WildHealth, Inc. ("WildHealth"), "a precision medicine service, which purportedly 'leverages advanced machine learning to combine DNA analysis, biometrics, microbiome testing and phenotypic data to provide people with a blueprint for truly optimized health and a maximized health span.'" *Id.* ¶ 2. "In November 2022, unbeknownst to investors, WildHealth received notice that reimbursements for its services rendered under a Medicare

1

demonstration program related to COVID-19 testing . . . were suspended pending further review." *Id.* ¶ 3. LivePerson, however, did not reveal WildHealth's suspension from Medicare reimbursements until late February and early March 2023. *See id.* ¶¶ 4–9. During the class period, LivePerson made misleadingly upbeat statements about its business, operations, and prospects; in particular, as to the effectiveness of its internal controls, while failing to disclose WildHealth's suspension. *See id.* ¶¶ 25–33. The truth about LivePerson's ineffective internal controls gradually emerged between February 28 and March 6, 2023, *see id.* ¶¶ 33–40, during which time LivePerson's share price fell 65.02%, from $11.81 per share to $4.13 per share, *id.* ¶ 39.

Also on December 1, 2023, notice of this lawsuit was published on *Business Wire*. Dkt. 10 ("Lieberman Decl."), Ex. 2. As required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(A), the notice summarized the basis for this action and informed members of the putative class that they had 60 days to move for appointment as lead plaintiff. That 60-day period expired on January 30, 2024.

On January 30, 2024, Damri filed a motion for appointment as lead plaintiff and for approval of his chosen counsel, Dkt. 7, and a memorandum of law in support, Dkt. 9 ("Damri Br."). Damri is represented by Pomerantz LLP. Damri is the only person who seeks appointment as lead plaintiff.

On February 8, 2024, the defendants (hereinafter, "LivePerson") filed a memorandum of law opposing Damri's appointment. Arguing that Damri's lawsuit was "lawyer-driven" and noting that Damri claims "only" $375 in losses, it contends that he lacks the qualifications required of a lead plaintiff. Dkt. 14 ("Def. Br."). On February 15, 2014, Damri filed a reply. Dkt. 18 ("Damri Reply Br.").

## II.     Appointment of Lead Plaintiff

The PSLRA governs motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under the federal securities laws. The PSLRA directs the court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person who: (1) has either "filed the complaint or made a motion in response to a notice," *id.* § 78u–4(a)(3)(B)(iii)(I)(aa); (2) has the "largest financial interest in the relief sought by the class," *id.* § 78u–4(a)(3)(B)(iii)(I)(bb); and (3) "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," *id.* § 78u–4(a)(3)(B)(iii)(I)(cc). "[T]his presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

As noted, Damri filed the complaint, and is the only person seeking appointment as lead plaintiff, satisfying the first prong. The Court therefore turns to the second and third elements of the PSLRA's test.[1]

---

[1] At the threshold, Damri argues that LivePerson lacks "standing" to object to his serving as lead plaintiff. Damri Reply Br. at 3–4. That is incorrect for two reasons. First, Damri is wrong to cast the question as one of standing. Constitutional standing places limits on whether a litigant may seek a particular form of relief. *Cf., e.g., Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."). That doctrine does not have any bearing on LivePerson's bid to be heard here, not in support of relief for itself, but in opposition to Damri's requested relief (*i.e.*, appointment as lead plaintiff). Although Damri's motion is unopposed, the Court is obliged to conduct an independent review to ensure he

3

### A. Financial Interest

Damri certifies that he purchased 500 shares of LivePerson during the class period, retained 50 shares through the class period's end, and lost a total of $375 on these when the share price dropped. Lieberman Decl., Ex. 1. Because an alternative lead plaintiff has not come forward, let alone one with a larger financial stake, the Court assumes—subject to the discussion below of the Rule 23 factors—that Damri's financial interest renders him suitable to serve as lead plaintiff. *See, e.g., Bristol County Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, No. 18 Civ. 3021 (RJS), 2018 WL 3546182, at *1 (S.D.N.Y. July 24, 2018); *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097 (JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011); *Jolly Roger Offshore Fund LTD v. BKF Capital Grp., Inc.*, No. 07 Civ. 3923 (RWS), 2007 WL 2363610, at *3 (S.D.N.Y. Aug. 16, 2007).

### B. Rule 23 Requirements

The Rule 23 requirements for class certification are commonly referred to as numerosity, commonality, typicality, and adequacy. *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015). At this early stage of the litigation, however, "'only the last two factors—typicality and adequacy—are pertinent.'" *Lopez v. CTPartners Exec. Search Inc.*, No. 15 Civ.

---

satisfies the PSLRA's requirements. *See, e.g., Springer v. Code Rebel Corp.*, No. 16 Civ. 3492 (AJN), 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017) (collecting cases). As such, LivePerson's role on this motion is akin to that of an *amicus curiae*, whose arguments the Court may consider in its discretion. *Cf. Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 538–39 (D.C. Cir. 1999) (discussing courts' discretion as to the role of *amici* in litigation and noting that *amici* need not satisfy the justiciability requirements of Article III). Second, although it is uncommon for a defendant to oppose an otherwise unopposed motion for appointment as lead plaintiff, the case authority permits defendants to be heard on this point. *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n.3 (S.D.N.Y. 2012) ("[T]he Court, taking account of the fact that there are no other plaintiffs challenging the . . . motion for lead plaintiff, finds that the purpose of the PSLRA in preventing 'lawyer-driven' litigation is best served by having more argument, not less, from any interested source.").

4

1476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)). A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). A lead plaintiff is adequate where he "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)). To obtain appointment as lead plaintiff, "[t]he moving plaintiff must make only a preliminary showing" that the typicality and adequacy "requirements under Rule 23 have been met." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

It is undisputed that Damri satisfies the typicality requirement. His claims "are typical of the class because [his] claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (citing *Drexel*, 960 F.2d at 291). As the Complaint alleges, every member of the putative class, "(1) purchased or acquired [LivePerson] securities during the class period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market." *Jolly Roger*, 2007 WL 2363610, at *4. Accordingly, Damri's claims arise from the same course of conduct as other class members' claims.

LivePerson, however, opposing Damri's motion for appointment as lead plaintiff, disputes whether Damri is an adequate class representative. It argues that his net loss—$375—is so small as to give him an insufficient interest in the outcome of the litigation "to control counsel's performance and to control the litigation on behalf of the class." Def. Br. at 5. As it puts the point, Damri's "*de minimis* losses and little true financial interest in the matter give him no incentive to adequately represent the putative class." *Id.* at 6.

The Court is unpersuaded, substantially for the reasons recently given by Judge Rakoff, in appointing a lead plaintiff with a net loss of $385:

> [The proposition that a plaintiff with only a modest loss is not adequately incentivized to pursue a class action is] at odds with both the text and the purpose of PSLRA, not to mention one of the main purposes of aggregate litigation itself. . . .
>
> The PSRLA's lead plaintiff provisions do not erect a barrier that prevents any plaintiff with a small stake from representing a class. Instead, the PSLRA responded to a particular problem with a precise solution. The problem was the "race to the courthouse," in which the first plaintiff to file (typically, a law firm's hapless recruit) would represent the class by default. The solution was to establish an orderly, competitive process through which aspiring class representatives could prove their merits. Plaintiffs with low stakes are not disqualified from entering that competition. . . . [In the PSLRA, Congress] establish[ed] a competitive process that a qualified, motivated entrant—perhaps even one with a small personal stake—might win.
>
> Declining to appoint a movant as lead plaintiff simply because he has little at stake would also be inconsistent with a key purpose of aggregate litigation. The *raison d'etre* of the class action is to bring justice to individual plaintiffs who have meritorious claims but relatively little at stake. It would be altogether incongruous to decline to appoint a lead plaintiff simply because the candidate class representatives are the very people who are supposed to benefit from proceeding as a class.

*Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 64–65 (S.D.N.Y. 2022) (citations omitted). That Damri's loss pales before those of lead plaintiffs in other putative securities class actions does not mean he lacks a personal interest in recovering that loss. Indeed, the aggregation of modest individual losses is implicit in the class action mechanism, which aims "to

overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93–94 (2d Cir. 2018) (citation omitted). And a holding that a plaintiff with a small loss thereby is inadequate to lead a class could, at the threshold, block many otherwise viable class actions from proceeding. *Cf. Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare. The fixed costs of litigation make it impossible."). Indeed, certified class actions outside the securities law area commonly are comprised of members claiming losses that are a fraction of the $375 that Damri seeks here. *See, e.g., Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 273 (6th Cir. 2016) (consumer fraud case where each plaintiff was allegedly charged an extra $15 in hidden gym fees); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.) (alleged usurious loan scheme where each plaintiff sought damages "of $15 to $30" from improper interest rates); *Bush v. Rust-Oleum Corp.*, No. 20 Civ. 3268 (LB), 2024 WL 422080, at *2 (N.D. Cal. Feb. 5, 2024) (consumer mislabeling case where each plaintiff allegedly paid a price premium for cleaning products priced between $10 and $20 advertised as "non-toxic" and "Earth friendly").

The adequacy requirement serves a different purpose. "The adequacy inquiry under Rule 23(a)(4) serves to uncover *conflicts of interest* between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (emphasis added); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (adequacy of representation focuses on "concerns about the competency of class counsel and conflicts of interest"). Such

conflicts often take the form of "differences in the type of relief sought," the distribution of "limited fund recoveries," and the question of how to manage "economic competitors within the same class." 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed., Nov. 2023 update). In this case, however, LivePerson has not articulated any theory under which Damri's interests conflict with those of other investors, including any person who purchased a greater number of shares than he and held these through the class period. Nor has LivePerson contended that Damri has "so little knowledge of and involvement in the class action" that he "would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995). To the contrary, Damri has certified that he has "discussed this case with [his] counsel and attended a conference call with attorneys from Pomerantz," that he is "aware of the current status of this litigation," and that "[t]he investment losses that [he] incurred . . . were sufficient to motivate [him] to take an affirmative role in this litigation." Dkt. 19 ("Lieberman Reply Decl."), Ex. 1. This Court thus holds that, notwithstanding that the loss he claims is small by the standards of most securities class actions, Damri's claimed loss does not make him inadequate to represent the class. *See, e.g., Lifestance*, 641 F. Supp. 3d at 65 (appointing lead plaintiff with $385 in net losses); *Fagen v. Enviva Inc.*, No. 22 Civ. 2844 (DKC), 2023 WL 1415628, at *2 (D. Md. Jan. 31, 2023) (appointing lead plaintiff with $721 in net losses); *Olsson v. PLDT Inc.*, No. 23 Civ. 885 (CJC), 2023 WL 3139912, at *3 (C.D. Cal. Apr. 26, 2023) (appointing lead plaintiff with $240.23 in net losses); *Houghton v. Leshner*, No. 22 Civ. 7781 (WHO), 2023 WL 2485785, at *2 (N.D. Cal. Mar. 13, 2023) (appointing lead plaintiff with $80 in net losses).

With that objection put aside, the Court, on the facts presently known, finds Damri an adequate class representative. He has certified that he is willing to fulfill the duties of lead

plaintiff, Lieberman Decl., Exs. 3–4. He has retained counsel with significant experience in securities fraud cases, *id.*, Ex. 5. And there is no indication to date that Damri has any interest that is antagonistic to the interests of the class. *See Plumbers, Pipefitters & MES*, 2011 WL 4831209, at *2; *Jolly Roger*, 2007 WL 2363610, at *5.

Because Damri, on the record at hand, satisfies all of the PSLRA requirements, the Court finds him presumptively the most adequate plaintiff. That presumption is rebutted where the candidate "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). Here, for the reasons above, Damri has demonstrated that he will fairly and adequately represent the interests of the class, and no unique defense has been raised as to his claim. The Court therefore appoints Damri lead plaintiff.

### III.  Appointment of Lead Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78u–4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection.'" *Sallustro v. CannaVest Corp.*, No. 14 Civ. 2900 (PGG), 2015 WL 1262253, at *10 (S.D.N.Y. Mar. 19, 2015) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).

Here, Damri has selected the firm of Pomerantz LLP. Having reviewed the firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds that it is well qualified to serve as lead counsel. *See Elstein v. Net1 UEPS Techs., Inc.*, 13 Civ. 9100 (ER), 2014 WL 3687277, at *8 (S.D.N.Y. July 23, 2014) ("Courts in this Circuit have previously approved the Pomerantz Firm as lead

plaintiffs' counsel in securities class actions on a number of occasions."). Accordingly, the Court appoints Pomerantz LLP as lead counsel.

## CONCLUSION

For the foregoing reasons, the Court hereby appoints Noam Damri lead plaintiff and Pomerantz LLP lead counsel. The Clerk of Court is respectfully directed to terminate all pending motions. The Court orders the parties, by no later than March 29, 2024 to file a joint letter proposing a schedule for the filing of an amended complaint and any motion to dismiss.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 22, 2024
    New York, New York